**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARL MANN, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 06-3738** |
| | : | |
| **MACK TRUCKS, INC. and** | : | |
| **RICHARD SCHMIDT** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                    **March 19, 2008**

In this employment action brought under the Americans with Disabilities Act ("ADA"), the plaintiff Carl Mann ("Mann") moves for a new trial, challenging several evidentiary rulings.  At trial, Mann contended that his employer, the defendant Mack Trucks, Inc. ("Mack"), wrongfully terminated his employment during his probationary period because it mistakenly believed he was hypersensitive to diesel fuel fumes.  Mack denied that it regarded Mann as disabled; and, even if it had, he was not disabled under the ADA.

After a three-day trial, the jury found in favor of the defendant employer.  In answering jury interrogatories, it determined that Mack regarded Mann as having a physical impairment, but the impairment as perceived by Mack did not substantially limit Mann in a major life activity.  Mann now moves for a new trial.

In his initial motion, Mann had raised eight errors.  After receipt of the trial transcript, he reduced the issues to five.  Three of his contentions challenge rulings with respect to expert testimony, arguing that the defendant's expert's testimony should have been limited and the plaintiff's expert's should not have been restricted.  He also complains that the jury should have been specifically instructed that his expert's methodology was the approved one for assessing whether he was "substantially limited in the major life activity of working."

The additional claimed errors deal with reasonable accommodation and punitive damages, issues that are moot because the jury did not reach them.

None of Mann's contentions have merit.  Therefore, his motion for a new trial will be denied.

### Jury Instructions

The essence of Mann's complaint regarding the jury instructions with respect to the term "substantially limited in the major life activity of working" is that they did not highlight and endorse his expert's approach.   He argues that the court should have done so because the expert's methodology has been specifically adopted by the Third Circuit in a case in which the expert, Daniel Rapucci ("Rapucci"), had been an expert.

Mann's argument is flawed in two respects.  First, contrary to his impression, the Third Circuit has not approved Rapucci's specific approach.  Second, even if it had, the instruction given, though not exactly what Mann had requested, correctly stated the law.[1]

In *Deane v. Pocono Medical Center*, 142 F.3d 138 (3d Cir. 1998), the case relied upon by Mann, the Third Circuit was not asked to determine the legitimacy of Rapucci's methodology nor did it do so.   In assessing whether summary judgment had been appropriate in that case, the *Deane* Court considered Rapucci's conclusion that had the "regarded as" plaintiff been as impaired as the defendant believed, she would have been precluded from consideration for employment within her profession and within a wide range

---

[1]  Mann's counsel explicitly registered approval of the jury instruction, proclaiming that he was "ecstatic" over the charge.  His failure to object to the instructions constitutes a waiver.  Fed. R. Civ. P. 51; *see Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 276 (3d Cir. 1998) (explaining the purpose and necessity of objecting to jury instructions, in accordance with Rule 51, prior to the jury retiring in order to preserve alleged error for appeal).

of jobs within her geographic region, and many of the available jobs in the service-producing industry and most jobs in goods-producing industries.  142 F.3d at 145.  This conclusion was one bit of evidence in the material factual dispute equation used in applying the summary judgment standard.  The Third Circuit did not evaluate the methodology employed by Rapucci.  It merely held that his conclusions evidenced a factual dispute that was not appropriately decided on a motion for summary judgment.  It was accepted in the context of the case at that stage.  Thus, the court did not rule that it was "the" approved methodology.[2]

The fact that the Third Circuit did not reject the methodology does not mean that it approved it as the standard.  Because it is not the standard, it need not be given as a jury instruction.  The court is required to instruct the jury on the correct principles of law.  *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).  It is not required to use the exact language urged by a party, even if it is correct.  *See Williams v. Mussomelli*, 722 F.2d 1130, 1134 (3d Cir. 1983) ("failure to use the exact words requested by counsel is not reversible error."); *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 770 (3d Cir. 1987) (the trial court has broad discretion concerning jury instructions).

An instruction using the words "few, many and most," as suggested by Mann, would not have been appropriate.  Those words are undefined and subject to varying interpretations depending on each juror's point of view.  Furthermore, they state a conclusion.  What is "few," what is "many," and what is "most" is for the jury to determine

---

[2]  Mann also argues that the Third Circuit adopted an approach similar to Rapucci's in *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778 (3d Cir. 1998).  The *Mondzelewski* Court merely held that the conclusions reached by the plaintiff's vocational expert evidenced a disputed material fact "for the purpose of surviving summary judgment."  *Id*. at 785.  It neither evaluated nor endorsed the methodology employed by the plaintiff's expert.

from considering the number of jobs that the expert opines the plaintiff cannot perform.

### The Defense Expert

Mann argues that the court should not have allowed the defendant's vocational expert, Rosalyn Pierce ("Pierce"), to testify that Mann, as perceived by the defendant, would not have been substantially limited in the major life activity of working because that opinion was not included in her report. Pierce's report, which was produced in discovery, did contain the opinion Mann claims was not there. It may not have been stated in the precise words later used in her trial testimony; but, the theory was there.

In her report, Pierce specifically stated that Mann, assuming his sensitivity to diesel fuel, "is not restricted from a broad class of occupations." Disagreeing with the plaintiff's expert, she wrote that Mann was not qualified for many of the jobs Rapucci cited and that the "pool of jobs from which Mann is hypothetically restricted is very small." Summarizing her criticism of Rapucci, Pierce opined that he had "identified an exaggerated number of jobs through which an employee might be expected to come into contact with diesel fumes."

Pierce's testimony was consistent with her report. She opined that a person who could not work around diesel fuel would not be precluded from an "entire class of jobs" or from a "broad range of jobs in various classes."

Mann also complains that the defense expert should not have been allowed to criticize Rapucci's opinions. This complaint ignores the reality of expert testimony. Experts often disagree with respect to the final conclusions and the ways to get there. Jurors are free to accept or reject expert testimony. *In re TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999). They must choose whose opinion is more reliable, taking into account each

4

expert's methodology.  Accordingly, where there is a "battle of the experts," it is permissible for the experts to challenge each other's findings and bases for conclusions.

Again, Mann claims that the court was required to place its imprimatur on his expert's methodology and conclusions by precluding Pierce from criticizing them.  As noted earlier, his expert's approach has not been endorsed by the Third Circuit as he claims. Furthermore, instructing the jury that his expert's analysis was the correct one would have invaded the jury's provence to resolve the conflict between the experts.  *TMI Litigation*, 193 F.3d at 665.  Indeed, Mann acknowledges that "the Court of Appeals has not *limited* the methods by which substantial impairment *must* be proven."

### The Remaining Issues

The remaining issues relate to evidentiary rulings that did not affect the jury's verdict.  *See, e.g., Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (harmless error "cannot be grounds for reversal or a new trial").  The jury found that the impairment as perceived by Mack did not substantially limit Mann in the major life activity of working. It also never reached the reasonable accommodation question.  Thus, any evidentiary rulings bearing on reasonable accommodation and the interactive process did not affect the verdict.

### Conclusion

There was no error with respect to any evidentiary rulings that affected the jury's verdict.  Nor would a miscarriage of justice result in the denial of a request for a new trial. Therefore, Mann's motion for a new trial will be denied.